Alexander E. Potente, Bar No. 208240
alex.potente@clydeco.us
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:   (415) 365-9800
Facsimile:    (415) 365-9801

*Attorney for Plaintiff Federal Insurance Company*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND MONEY JUDGMENT** |
| RELYPSA INC. (NKA VIFOR PHARMA, INC.) and VIFOR (INTERNATIONAL) AG (AKA VIFOR (INTERNATIONAL) INC. AND VIFOR (INTERNATIONAL AG C/O LUITIPOLD PHARMACEUTICAL, INC.)) | |
| Defendants. | |

1    Plaintiff Federal Insurance Company ("Federal") brings this Complaint for
2   Declaratory and Money Judgment in this Court pursuant to 28 U.S.C. § 1332(a) and
3   28 U.S.C. § 2201.  Federal alleges on knowledge, information, and belief as follows:

4                            **NATURE OF THE ACTION**

5    1.    This action concerns insurance coverage for a large number of product
6   liability lawsuits against Vifor (International) AG ("Vifor International") and several
7   other entities alleging that ferric carboxymaltose ("FCM"), a compound developed
8   by Vifor International that is the active ingredient in a drug called "Injectafer,"
9   causes severe and/or persistent hypophosphatemia (the "Injectafer Litigation").  The
10  original complaints in the Injectafer Litigation were filed in December 2018 and
11  shortly thereafter, and the bulk of the complaints are now pending in a single
12  consolidated proceeding in the United States District Court for the Eastern District
13  of Pennsylvania, though there remain complaints pending in other jurisdictions as
14  well.

15   2.    Federal issued a claims-made life sciences insurance policy to Vifor
16  International's corporate affiliate Relypsa, Inc. ("Relypsa") for the January 1, 2020
17  to January 1, 2021 policy period (the "Federal Policy").[1]  Although the Federal
18  Policy contains an endorsement that defines Named Insured to mean not only
19  Relypsa but also Vifor (International AG C/O Luitpold Pharmaceutical, Inc.), Vifor
20  Pharma Ltd., and Vifor Pharma Participations Ltd. (collectively, the "Vifor Named
21  Insureds"), the Federal Policy provides the following limitation on who is an
22  insured:

23       [N]o specific person or organization is an **insured** with respect to any
24       damages, loss, cost or expense arising out of any:

25

26  _____

27  [1] A true and correct copy of the Federal Policy, without application and with
    premium, rating, and other financial information redacted, is attached as Exhibit A.

28

1.  injury, damage, claim or **suit** (whether or not the foregoing is a **circumstance**) that is **deemed known** by such person or organization before the . . .

    a.  beginning of the policy period . . .
    . . .
    including any change, continuation or resumption of any such injury or damage at any time.

2.  **circumstance** that is **deemed known** by such person or organization before the . . .

    1.  beginning of the policy period . . .

    . . .

    which would reasonably be expected to result in any payment under this insurance.

Federal Policy, Products Completed Operations Coverage Part ("PCO Coverage Part"), Who Is An Insured, Section C (the "Deemed Known Provision").

3.      As detailed in this Complaint, Vifor International knew of the Injectafer Litigation before the beginning of the January 1, 2020 to January 1, 2021 policy period.  This alone is sufficient to bar coverage for Vifor International under prong (1) of the Deemed Known Provision.

4.      Moreover, before January 1, 2020, Vifor International knew that, although plaintiffs had mistakenly named its corporate affiliates as defendants, it was the proper Vifor defendant in the Injectafer Litigation as it was the Vifor entity that developed FCM and licensed it to non-Vifor defendants for use and sale in the United States pursuant to a master licensing agreement to which it was the only Vifor party, and none of the originally named Vifor entities (or any other Vifor entity, including Relypsa) had any involvement with FCM and Injectafer in the United

States.[2]  A reasonable insured in Vifor International's position would have expected a claim to be made against it in connection with the Injectafer Litigation.  Thus, Vifor International had knowledge of a **circumstance** before the policy period, such that prong (2) of the Deemed Known Provision also bars coverage for Vifor International here.

5.    Federal therefore seeks the following relief as against Relypsa and Vifor International: (1) a judicial determination and declaration that, with respect to the Injectafer Litigation, Vifor International is not an **insured** under the Federal Policy, for which Relypsa is the policyholder and **first named insured**, and Federal has no defense or indemnity obligations to Vifor International in connection with the Injectafer Litigation; and (2) a money judgment for reimbursement of any amounts advanced under the Federal Policy for Vifor International in the Injectafer Litigation.

## PARTIES

6.    Plaintiff Federal is a corporation organized under the laws of Indiana with its principal place of business in New Jersey.  Federal is therefore a citizen of Indiana and New Jersey.  Federal legally transacts insurance business in the State of California and within the geographical jurisdiction of this Court.

7.    Defendant Relypsa is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business in Redwood City, California.  Relypsa is therefore a citizen of Delaware and California.

8.    Defendant Vifor International is a corporation organized and existing under the laws of Switzerland with its principal place of business in Switzerland. Vifor International is therefore a citizen of Switzerland.

---

[2] Vifor Pharma Ltd. ("Vifor Pharma") and all of its direct and indirect subsidiaries, including but not limited to Vifor Pharmaceuticals Management Ltd. ("Vifor Management"), Vifor Pharma – Aspereva Pharmaceuticals Inc. ("Aspereva"), Vifor (International) AG ("Vifor International"), and Relypsa, Inc. ("Relypsa") are referred to collectively in this Complaint as "Vifor."

# JURISDICTION

9.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question of actual controversy between the parties as described more fully below.  Federal also seeks a money judgment.

10.      This action is ripe for adjudication.

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.      This Court has general and specific personal jurisdiction over Federal, which regularly conducts business in California and issued the Federal Policy to Relypsa in California.

13.      This Court has general and specific personal jurisdiction over Relypsa, which maintains its principal place of business in California and negotiated and received the Federal Policy, for which it is the **first named insured**, in California. As the **first named insured** under the Federal Policy, Relypsa is primarily responsible to act on behalf of any other person or organization other than Federal having rights or duties under the Federal Policy.  Federal Policy, PCO Coverage, Conditions, First Named Insured—Special Provisions.

14.      This Court also has jurisdiction over Vifor International pursuant to California Code of Civil Procedure § 410.10, which allows this Court to exercise jurisdiction "to the fullest extent permitted by due process." *E.g., Terracom v. Valley Nat. Bank,* 49 F.3d 555, 559 (9th Cir. 1995).

15.      Based on information and belief, discovery is likely to establish a basis for this Court to exercise general jurisdiction over Vifor International on the basis of substantial or continuous and systematic contacts with California, including but not

necessarily limited to based on its relationship with Relypsa, Vifor International's U.S. corporate affiliate, and based on its provision of FCM for use in Injectafer throughout the United States, including in California, as relevant to the underlying claims at issue in this coverage litigation.

16.     Regardless, this Court has specific personal jurisdiction over Vifor International for purposes of this coverage litigation because (1) Vifor International purposefully availed itself of the privilege of conducting activities in California by claiming coverage under the Federal Policy; (2) Federal's claims against it in this coverage action arise out of Vifor International's demand for coverage under an insurance policy issued in California to a **first named insured** domiciled in California; and (3) the exercise of personal jurisdiction over Vifor International is reasonable.

17.     Vifor International purposefully availed itself of conducting activities in California, as it was explicitly added as a Named Insured on the Federal Policy, which was negotiated, issued, and delivered in California to Vifor International's California-based corporate affiliate, Relypsa, and includes only California state amendatory endorsements.  Additionally, Vifor and its representatives from Willis Towers Watson ("Willis") in Switzerland were directly involved in providing information and negotiating certain coverage under the Federal Policy.  Moreover, Vifor International actively seeks coverage under the Federal Policy in connection with the Injectafer Litigation and at various junctures has disputed Federal's coverage position as to Vifor under the Federal Policy.  In doing so, Vifor International acknowledged that California law applies to the interpretation of the Federal Policy through its coverage counsel's application of California law to coverage issues in letters to Federal.

18.     In light of the Federal Policy's aforementioned California connections, this coverage action necessarily arises out of Vifor International's California-based activities related to the Federal Policy.

19.     The exercise of personal jurisdiction over Vifor International is eminently reasonable here and raises no due process concerns.  Vifor International cannot reasonably expect to actively seek coverage under its California affiliate's insurance policy to which California law applies and not be subject to litigation in California.  Vifor International has already obtained coverage counsel in the United States who has demonstrated familiarity with California law and therefore would not be significantly burdened by litigating the coverage dispute in California.  Furthermore, California has a significant interest in this coverage dispute involving an insurance policy issued to a California-based insured to which California law will apply.

## DIVISIONAL ASSIGNMENT

20.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this insurance coverage dispute occurred in this judicial district.

21.     The Federal Policy was issued to Relypsa at its principal place of business, 100 Cardinal Way, Redwood City, CA 94063.  For purposes of the applicable PCO Coverage Part under the Federal Policy, Relypsa, as the **first named insured** on the Federal Policy, "is primarily responsible . . . to act on behalf of any person or organization . . . having rights or duties under this policy."  Federal Policy (Ex. A), PCO Coverage Part, Conditions, First Named Insured—Special Provisions. The Federal Policy further provides: Federal's "communications will be principally through the first named **insured**.  The inclusion of any other **insured** or other interest under this insurance will not obligate us to provide any notice or other specific information to any such interest."  *Id.*

22.     The Federal Policy was also negotiated in this district by Federal underwriters and brokers at Willis North America, all of whom were located in San Francisco, California.

## FACTUAL BACKGROUND

### A. Vifor International and Injectafer

23.     Vifor International developed ferric carboxymaltose ("FCM"), which is the Active Pharmaceutical Ingredient ("API") in both Injectafer and Ferinject, intravenous medications indicated for the treatment of iron deficiency anemia.

24.     Vifor International designs, manufactures, and sells Ferinject in Europe.

25.     In the United States, Vifor International licenses the API FCM to Luitpold Pharmaceuticals, Inc. n/k/a American Regent, Inc. ("ARI") for manufacture and use in the United States by ARI as Injectafer.

26.     On or about October 31, 2004, Vifor International entered into a Master Licensing Agreement with ARI (the "MLA"), under which Vifor International provides and ships the API FCM to ARI in the United States, and ARI has exclusive rights to use the API to produce, commercialize, and sell Injectafer in the United States.

### B. Injectafer Litigation

27.     Beginning in or about December 2018, numerous product liability lawsuits were filed in the United States, alleging that FCM/Injectafer causes severe and/or persistent Hypophosphatemia ("HPP"), a condition involving low levels of phosphate in a patient's blood.

28.     By way of example, on December 19, 2018, Katherine Crockett filed a complaint in the proceeding captioned *Crockett v. Luitpold Pharmaceuticals, Inc. et al.,* No. 02043 (Pa. Ct. C.P., Phila. Cnty.) (the "*Crockett* Lawsuit"), which was subsequently removed to the United States District Court for the Eastern District of

Pennsylvania at docket number 2:19-cv-00276.  A true and correct copy of the original complaint in the *Crockett* Lawsuit (the "*Crockett* Original Complaint") is attached as Exhibit B.

29.     The *Crockett* Original Complaint alleged that "FCM causes a condition called 'Severe Hypophosphatemia' . . . and potentially 'persistent hypophosphatemia'" (Ex. B, ¶ 49) and named as defendants Luitpold Pharmaceuticals, Inc.; American Regent, Inc.; Daiichi Sankyo, Inc.; Daiichi Sankyo Co., Ltd.; Vifor Pharmaceuticals Management Ltd.; and Vifor Pharma – Aspereva Pharmaceuticals Inc.

30.     Subsequently or around the same time as the filing of the *Crockett* Original Complaint, a number of other lawsuits were filed alleging that FCM/Injectafer causes severe and/or persistent HPP.  Many of these lawsuits were filed in Pennsylvania state and federal court and are now consolidated in the original docket for the *Crockett* Lawsuit, renamed *In re Injectafer Products Liability Litigation,* No. 19-cv-00276 (E.D. Pa.).  In addition, several substantially similar lawsuits were filed in other jurisdictions, including but not necessarily limited to the complaints filed in the proceedings captioned *Alan M. Lagonegro v. Luitpold Pharmaceuticals, Inc., et al.,* Index No. E2022004910 (N.Y. Sup. Ct., Monroe Cnty.) and *Leesa Castaneda v. Luitpold Pharmaceuticals, Inc.,* No. 6:22-cv-01141 (M.D. Fla.).  These product liability lawsuits alleging that FCM/Injectafer causes severe and/or persistent HPP are all referred to collectively as the "Injectafer Litigation."

**C. <u>Vifor International's Knowledge of the Injectafer Litigation</u>**

31.     Vifor International was not originally named as a defendant in the Injectafer Litigation.  Instead, the *Crockett* Original Complaint named two of Vifor International's corporate affiliates—Vifor Pharmaceuticals Management Ltd.

("Vifor Management") and Vifor Pharma – Aspereva Pharmaceuticals Inc. ("Aspereva")—both companies in the Vifor corporate family.

32.     However, it is clear from the *Crockett* Original Complaint that, with respect to Vifor, the allegations describe the conduct and activity of Vifor International, not Vifor Management or Aserpeva, particularly because Vifor International, not Vifor Management or Aspereva, was the party to the MLA pursuant to which Injectafer Litigation co-defendant ARI distributed Injectafer in the United States.

33.     In July 2019, plaintiff voluntarily dismissed Aspereva and, in August 2019, filed an amended complaint in the *Crockett* Lawsuit naming Vifor Management as the only Vifor defendant.

34.     Again, although Vifor International was not named as a defendant, the First Amended Complaint in the *Crockett* Lawsuit clearly describes the conduct, activities, and contract (*i.e.,* the MLA) of Vifor International, not Vifor Management.

35.     Oliver Kronenberg, Executive Vice President – Group General Counsel for Vifor Pharma Group and Vifor Pharma Management Ltd., was directly involved in communications regarding the defense of the Injectafer Litigation in July and August 2019.

36.     Email communications in and around August 2019 between Mr. Kronenberg and Stefan Schulze, then President of the Executive Committee and COO for Vifor Pharma Group and subsequently CEO of Vifor Pharma Group, discuss the Injectafer Litigation.

37.     Messrs. Kronenberg and Schulze were aware of the Injectafer Litigation no later than July-August 2019.

38.     During this time period, email communications involving Mr. Kronenberg indicate he knew that Vifor International, not Vifor Management, was

the party to the MLA pertaining to the distribution and sale of Injectafer in the United States. Mr. Kronenberg knew that claims may be asserted against Vifor International in connection with the Injectafer Litigation no later than August 26, 2019.

39.     Plaintiff finally served Vifor Management in the *Crockett* Lawsuit on or about September 18, 2019.

40.     On November 25, 2019, Vifor Management filed a motion to dismiss the First Amended Complaint in the *Crockett* Lawsuit (the "*Crockett* Motion to Dismiss"). *See Crockett* Lawsuit, ECF No. 83-2.

41.     The *Crockett* Motion to Dismiss states:

> It should be noted that <u>Plaintiff named and served the wrong entity</u>. Vifor Pharma Management Ltd. is not the entity that designed, developed, supplies or manufactures ferric carboxymaltose, or commercializes Ferinject in Europe, nor is it the entity that signed a licensing agreement with American Regent, as alleged in the Complaint. Declaration of Charles Frederick Goulburn ¶¶ 19-11, 14-16 ("Goulburn Decl."). Rather, <u>the licensing agreement at issue was entered into between Vifor (International) AG and what is now American Regent. *Id.* at ¶ 14. <u>Vifor (International) AG is the entity responsible for activities relating to ferric carboxymaltose and Ferinject</u>. *Id*. at ¶¶ 14-15. Vifor (International) AG is an affiliate of the named Defendant, Vifor Pharma Management Ltd., and they share direct and ultimate parent entities, all of which are Swiss corporations. *Id*. at ¶ 6. Nevertheless, for purposes of this motion and because the personal jurisdiction analysis would apply equally to Vifor (International) AG as it would to Vifor Pharma Management Ltd., we will refer to both Vifor-related entities collectively herein as "Vifor" without distinction, but reserve all rights to argue that <u>Plaintiff did not name and serve the proper entity</u> at a later date if it becomes necessary.

*Id.*, p. 2, n.2 (underlining added).

42.     In support of the statements in Footnote 2 of the *Crockett* Motion to Dismiss, Vifor Management also filed on November 25, 2019 the Declaration of Charles Frederick Goulbourn (the "Goulbourn Declaration"). *See Crockett Lawsuit,*

ECF No. 83-3.

43.     The Goulbourn Declaration states: "Vifor (International) AG (A/K/A Vifor (International) Inc.) licenses ferric carboxymaltose to American Regent through a licensing agreement" and that, under that licensing agreement, Vifor International ships ferric carboxymaltose to American Regent in New York for sale in the United States. *Id.*, ¶¶ 14-15.

44.     In her opposition to the *Crockett* Motion to Dismiss (the "*Crockett* Motion to Dismiss Opposition"), plaintiff acknowledged that "Defendant Vifor is suggesting that the wrong Vifor entity was sued" and requested "discovery to explore the relationship between Vifor Pharmaceuticals Management, Ltd., Vifor (International) AG, and their parent company Vifor Pharma Ltd." *See Crockett Lawsuit,* ECF No. 97, p. 22.

45.     The *Crockett* Motion to Dismiss Opposition further states:

> Plaintiff named Vifor Pharmaceuticals Management, Ltd. as the responsible party in her Complaint based on knowledge available to Plaintiff at the time. <u>Despite contact with Vifor counsel for the past ten months, including contact related to the proper address for Vifor Pharmaceuticals Management, Ltd., Plaintiff was not aware of the distinction between the aforementioned entity and Vifor (International) AG until reviewing the present motion to dismiss</u>. While Plaintiff will likely have to address this in an impending Motion for Leave to File an Amended Complaint, Plaintiff still submits this response brief in order to abide by the deadlines set by this Court and because it remains apparent that Pharmaceuticals Management, Ltd. is likely a liable party. Consistent with Defendant's motion at Footnote 2, Plaintiff will use "Vifor" to collectively refer to both Vifor Pharmaceuticals Management, Ltd. and Vifor (International) AG, except in those instances where it is necessary to identify one of the two parties, or another Vifor entity, by its individual name. Because both Vifor entities are affiliates and under the control of the same parent, Vifor Pharma, Ltd., the arguments in support of personal jurisdiction apply to both entities.

1  *Id.,* p. 1, n.1 (underlining added).

2      46.    On April 10, 2020, plaintiff in the *Crockett* Lawsuit filed the currently

3  operative Third Amended Complaint, naming the following Vifor entities as

4  defendants: Vifor Management; Vifor International; Vifor Pharma Participations,

5  Ltd. ("Vifor Participations"); and Relypsa.  *See Crockett* Lawsuit, ECF No. 120.

6      47.    On May 22, 2020, plaintiff in the *Crockett* Lawsuit filed a Motion for

7  Alternative Service on Defendants Vifor Pharma Ltd., Vifor Pharma Participations

8  Ltd., and Vifor (International) AG, asserting that "Vifor's counsel either knew, or

9  should have known, that the named entity for Hague Convention service was

10  allegedly an incorrect Vifor entity, yet failed to disclose that information in what is

11  an apparent complete disregard for not only Plaintiff's time and resources, but also

12  judicial economy and resources." *See Crockett* Lawsuit, ECF No. 133 (the "*Crockett*

13  Motion for Alternative Service"), p.5.

14      48.    In opposing the *Crockett* Motion for Alternative Service, the Vifor

15  defendants did not dispute that they had prior notice of the lawsuit and instead stated:

16      Had Plaintiff named the Vifor Entities back in November 2019 when she
        claims to have first learned of their existence through Vifor Management's
17      Declaration, and initiated Hague Service then, those entities would have been
        properly served months ago. Moreover, the information identifying Vifor
18      International as a licensor was publicly available on Injectafer's FDA-
        approved labeling for years before then and knowable to Plaintiff at the time
19      she filed her original Complaint in November 2018. Inexplicably, Plaintiff
        waited until four months after the deadline in the Court's Scheduling Order to
20      add parties to name these additional entities. Plaintiff could have named the
21      Vifor Entities long ago, and served them under the Hague Convention long
        before COVID-19 emerged.
22

23

24  *See Crockett* Lawsuit, ECF No. 135, p. 10 (underlining added).

25      49.    On July 17, 2022, the Court granted the Motion for Alternative Service,

26  emphasizing that:

27

28

there is plentiful evidence that the unserved Swiss Defendants [*i.e.,* the Vifor defendants] are <u>on notice of the case brought against them</u>: they are closely affiliated with one another and with a served Defendant which has been litigating this and many other substantially similar cases before this Court for over a year now, they are represented by the same U.S. based counsel and U.S. based counsel is in close contact with them.

*See Crockett* Lawsuit, ECF No. 149, p. 5 (underlining added).

**D. Federal Policy**

50.     Federal issued Policy No. 9947-68-37 SFO to Relypsa for the policy period of January 1, 2020 to January 1, 2021.  *See* Federal Policy (Ex. A), Declarations.

51.     By endorsement, the Federal Policy defines Named Insured to include Relypsa Inc., Vifor Pharma Ltd., Vifor Pharma Participations Ltd., and Vifor (International AG c/o Luitpold Pharmaceutical, Inc.).  *See id.*, Form 80-02-9301.

52.     The Federal Policy includes a Products-Completed Operations Liability Coverage Part. *See id.*, Coverages.

53.     The Federal Policy's PCO Coverage Part provides that Federal "will pay damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **insured contract**, for **bodily injury** or **property damage**, included in the **products-completed operations hazard**, that is caused by an **occurrence** to which this coverage applies." *Id.*, Coverages.

54.     The Federal Policy defines "**insured**" to mean "a person or organization qualifying as an **insured** in the Who Is An Insured section of this contract." *Id*.

55.     The "Who Is An Insured" section of the Federal Policy provides that "[i]f you are an organization (including a professional corporation) other than a

partnership, joint venture or limited liability company, you are an **insured**." *Id.*, Who Is An Insured.

56.    The Policy includes the following "Limitation[] On Who Is An Insured":

> With respect to any claims-made coverage, no specific person or organization is an **insured** with respect to any damages, loss, cost or expense arising out of any:
>
> 1. injury, damage, claim or **suit** (whether or not any of the foregoing is a **circumstance**) that is **deemed known** by such person or organization before the . . . :
>
> a. beginning of the policy period . . .
>
> including any change, continuation or resumption of any such injury or damage at any time.
>
> 2. **circumstance** that is **deemed known** by such person or organization before . . . :
>
> a. beginning of the policy period . . .
>
> which would reasonably be expected to result in any payment under this insurance.

*Id.*, PCO Coverage Part, Who Is An Insured, Section C (the "Deemed Known Provision").

57.    The Federal Policy defines "**deemed known**" to mean, in relevant part:

> with respect to a specific organization, known by or that would have been known from the standpoint of a reasonable person in the circumstances of any of such organization's directors, managers (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (whether or not any of the foregoing is an **employee**).

A **circumstance** or injury, damage, claim or **suit** (whether or not any of the foregoing is a **circumstance**) will be **deemed known** at the earliest time when any such person described above:

A. reports the **circumstance**, injury, damage, claim or **suit**, in whole or in part, to us or any other insurer;

B. receives a claim or **suit** in connection with the **circumstance**, injury or damage; or

C. becomes aware or would have been aware:

    1. that the **circumstance**, injury or damage, in whole or in part, has happened or has begun; or

    2. of any actual, alleged or threatened injury, damage, claim or **suit** in connection with the **circumstance**.

*Id.*, Definitions.

58.    The Federal Policy defines "**circumstance**" to mean, in relevant part, "facts as established by direct evidence that would reasonably be expected to result in any claim or **suit**."  *Id.*

59.    The Federal Policy defines "**suit**" to mean "a civil proceeding in which damages, to which this insurance applies, are sought" and "an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent."  *Id.*

60.    The Federal Policy defines "**officers**" to mean "a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any similar governing document."  *Id.*

**E. Requests for Coverage**

61.    Based on information and belief, Vifor reported the Injectafer Litigation to another insurer before December 31, 2019.

62.    On or about April 21, 2020, Federal first received notice of the Injectafer Litigation.

63.    Federal initially agreed to provide a defense to Relypsa, subject to a reservation of rights, but denied coverage as to the Vifor entities.

64.    Vifor disputed Federal's coverage position, and Federal agreed to provide a defense to all Vifor entities, including Relypsa and Vifor International, subject to a full and complete reservation of rights, including but not limited to the right to seek a judicial determination of Federal's rights and obligations under the Federal Policy with respect to the Injectafer Litigation and to seek reimbursement of any and all defense costs advanced under a reservation of rights.

## COUNT I

**For a Declaration that Vifor International does not constitute an insured under the Federal Policy based on the Deemed Known Provision**

65.    Federal realleges and incorporates by reference Paragraphs 1-64 of this Complaint as if fully set forth herein.

66.    As discussed above in Paragraphs 1-64, the Federal Policy includes a Deemed Known Provision that provides that an organization does not constitute an **insured** with respect to any claims-made coverage if one of its **officers** knew or reasonably would have known of either (1) an injury, damage, claim or **suit** (whether or not any of the foregoing is a **circumstance**) before the beginning of the policy period, *i.e.,* January 1, 2020 or (2) a **circumstance** before the beginning of the policy period, *i.e.,* January 1, 2020, which would reasonably be expected to result in any payment under this insurance.

67.    Upon information and belief, Messrs. Kronenberg and/or Schulze held officer positions at Vifor International as of December 31, 2019—the day before the Federal Policy incepted—and are therefore **officers** for purposes of the Deemed Known Provision.

68.     Messrs. Kronenberg and/or Schulze were aware of the Injectafer Litigation before January 1, 2020.

69.     This fact alone is sufficient to preclude coverage for Vifor International under prong (1) of the Deemed Known Provision.

70.     Moreover, a reasonable insured in Mr. Kronenberg's and/or Mr. Schulze's position would have anticipated a claim against Vifor International based on knowledge of the Injectafer Litigation and the fact that Vifor International, not Vifor Management, developed FCM and licensed it to Injectafer Litigation defendant ARI for distribution in the United States.  In fact, Mr. Kronenberg himself subjectively anticipated a claim against Vifor International no later than August 29, 2019.

71.     Additionally, prior to January 1, 2020, Vifor Management filed a motion to dismiss in the *Crockett* Lawsuit pointing clearly to the fact that Vifor International, not Vifor Management, was the proper Vifor defendant in the Injectafer Litigation.

72.     Thus, Vifor International, through Mr. Kronenberg and/or Mr. Schulze, knew of a **circumstance** which would reasonably be expected to result in payment under this insurance as required under prong (2) of the Deemed Known Provision.

73.      Federal is therefore entitled to a declaration that, under both prongs (1) and (2) of the Deemed Known Provision, Vifor International does not constitute an **insured** with respect to the Injectafer Litigation, and Federal therefore has no obligations to Vifor International under the Federal Policy with respect to the Injectafer Litigation.

## COUNT II

**For declaratory relief and money judgment for reimbursement from Vifor International of amounts paid for it in the Injectafer Litigation**

74.     Federal realleges and incorporates by reference Paragraphs 1-73 of this

Complaint as if fully set forth herein.

75. Federal agreed to pay defense fees and costs incurred by Relypsa and Vifor International in the Injectafer Litigation, subject to a timely, full, and complete reservation of rights, including the express reservation of the right to seek recoupment of all amounts advanced upon a determination that no coverage exists under the Federal Policy for the Injectafer Litigation.

76. Any amounts advanced by Federal to Vifor International in connection with the Injectafer Litigation constitute unjust enrichment to which Vifor International is not entitled.

77. Because the Federal Policy does not afford coverage for Vifor International in the Injectafer Litigation, Vifor International is obligated to reimburse Federal for amounts Federal has advanced or advances hereafter under the Federal Policy on behalf of Vifor International in connection with the Injectafer Litigation.

78. Federal has performed all of its obligations under the Federal Policy and otherwise satisfied all conditions necessary for establishing its right to relief.

79. Accordingly, Federal requests a declaration that, pursuant to California law, Vifor International is obligated to reimburse Federal for amounts it has paid or will pay on behalf of Vifor International in connection with the Injectafer Litigation and a money judgment against Vifor International in that amount plus interest.

WHEREFORE, Federal respectfully requests that this Court:

A. Enter judgment that the Federal Policy does not provide coverage for Vifor International in connection with the Injectafer Litigation because it does not constitute an **insured** based on the Deemed Known Provision;

B. Enter a declaratory judgment that Federal is entitled to reimbursement of any amounts advanced or paid by Federal in the defense or settlement

1    of, or a judgment in, the Injectafer Litigation and enter a money

2    judgment against Vifor International for that amount, plus interest;

3    C.    Award pre- and post-judgment interest on any and all judgments

4    entered by the Court;

5    D.    Award Federal its attorneys' fees and costs incurred herein; and

6    E.    Award Federal all other relief to which it may be entitled.

7

8    Dated: December 7, 2022        Respectfully submitted,

9                    CLYDE & CO US LLP

10

11                    By: */s/ Alexander E. Potente*

12                    Alexander E. Potente
                      Attorneys for Plaintiff,

13                    FEDERAL INSURANCE COMPANY

14    *Of Counsel*:

15    Daniel J. Standish (*pro hac vice* motion to be filed)
      dstandish@wiley.law

16    Margaret T. Karchmer (*pro hac vice* motion to be filed)
      mkarchmer@wiley.law

17    Elizabeth E. Fisher (*pro hac vice* motion to be filed)
      eefisher@wiley.law

18
19    WILEY REIN LLP
      2050 M Street, NW
20    Washington, DC 20036
21    (202) 719-7000 (tel)
      (202) 719-7049 (fax)
22

23

24

25

26

27

28